IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SHEMELA THOMAS                                                                                       PLAINTIFF

v.                                     Case No. 4:20-cv-01486-LPR

AUNDREA CULCLAGER, individually                                                      DEFENDANT

### ORDER

This Order resolves Plaintiff's Motion for a New Trial, To Alter or Amend, and Renewed Motion for Judgment as a Matter of Law on the Issue of Qualified Immunity.[1] The Motion primarily challenges the Court's determination that, as a matter of law, Warden Aundrea Culclager (the Defendant) had the necessary reasonable suspicion—or at least arguable reasonable suspicion—to detain then-Corrections Officer Shemela Thomas (the Plaintiff).[2] Based on this determination, the Court granted Warden Culclager's qualified immunity defenses on the claims that were tried.[3] Of course, that meant the case never made it to the jury—not on the qualified immunity question and not on the merits.[4] Understandably, such an outcome frustrated Ms. Thomas, and this Motion followed. Ms. Thomas raises four arguments in support of her Motion. The Court addresses each argument below.

1.    In her Motion and accompanying Brief, Ms. Thomas argues that Warden Culclager "waived [the] qualified immunity" defense by not moving for judgment as a matter of law on the

---

[1] Pl.'s Mot. to Alter J. (Doc. 86); Br. in Supp. of Pl.'s Mot. to Alter J. (Doc. 87).

[2] *See generally* Pl.'s Mot. to Alter J. (Doc. 86); Br. in Supp. of Pl.'s Mot. to Alter J. (Doc. 87); *see also* Order Granting Qualified Immunity (Doc. 82) at 3–6.

[3] *See* Order Granting Qualified Immunity (Doc. 82) at 6–7.

[4] *See id.* at 9; Sept. 1, 2023 Trial Tr. (Rough) at 10:09:32–10:12:56.

1

detention claim.[5]  Warden Culclager did not waive qualified immunity.  She raised the defense in her Answers to the various iterations of the Complaint.[6]  She raised the defense in her Motion for Summary Judgment and Brief in Support.[7]  Although the Court denied summary judgment on a few claims against Warden Culclager, the Court made clear that Warden Culclager could press her qualified immunity defense at trial.[8]  Then, before trial began, the Court made crystal clear what process would be used at trial to decide the qualified immunity defense.[9]  Specifically, the Court explained that, after the close of all evidence from both parties, the Court would (1) re-examine the issue of qualified immunity itself; (2) if there were still genuine issues of disputed fact material to the resolution of the qualified immunity issue, obtain the jury's determination on such facts; (3) make a final decision on qualified immunity; and (4) if the Court rejected the qualified immunity defenses, submit the ultimate constitutional questions to the jury.[10]  No one objected to that process.[11]

---

[5] Pl.'s Mot. to Alter J. (Doc. 86) at 1; Br. in Supp. of Pl.'s Mot. to Alter J. (Doc. 87) at 17–18.

[6] *See* Answer to Compl. (Doc. 5) ¶ 47; Answer to Am. Compl. (Doc. 12) ¶ 51; Answer to Suppl. Compl. (Doc. 32) ¶ 19.

[7] *See* Defs.' Mot. for Summ. J. (Doc. 37) at 1–3; Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 39) at 2, 8–9, 12, 19, 27.

[8] *See* Summ. J. Order (Doc. 59) at 29 ("For various reasons discussed below, Ms. Thomas's retaliatory-termination, retaliatory-search, and retaliatory-blacklisting claims fail.  Her retaliatory-seizure claim against Warden Culclager, however, proceeds to trial."); *id.* at 27 n.176 ("Warden Culclager will be entitled to qualified immunity if a jury finds that Warden Culclager did not actually hear Ms. Thomas say that she had already passed a strip-search."); *id.* at 46–47 ("Defendants are entitled to judgment in their favor as to all of Ms. Thomas's federal § 1983 claims and state constitutional claims *except* that Warden Culclager must stand trial on Ms. Thomas's First Amendment retaliatory-seizure claim and her Fourth Amendment unlawful-seizure claim (and the corresponding state constitutional claims).  Defendants are entitled to summary judgment in their favor on Ms. Thomas's invasion-of-privacy claim under Arkansas common law.  The Court declines to exercise supplemental jurisdiction over Ms. Thomas's battery and false-imprisonment claims.") (emphasis in original).

[9] *See* Aug. 29, 2023 Trial Tr. (Rough) at 10:54:16–10:56:51, 11:55:04–12:03:49.

[10] See *id.* at 10:54:16–10:56:22.  In the Court's view, this is the most orderly way to conduct the process envisioned by Eighth Circuit qualified immunity holdings like *Lee v. Andersen*, 616 F.3d 803, 811 (8th Cir. 2010) and *Littrell v. Franklin*, 388 F.3d 578, 584–85 (8th Cir. 2004).

[11] *See* Aug. 29, 2023 Trial Tr. (Rough) at 10:56:27–10:56:51.

In these circumstances, Warden Culclager did not waive (nor forfeit) her qualified-immunity defenses by excluding them from her Motion for Judgment as a Matter of Law after Ms. Thomas rested her case-in-chief.  It was clear to the Court and everyone else that Warden Culclager was still pressing her qualified immunity defenses and was relying on the process that the Court set out for resolution of such issues.  There was neither the intentional relinquishment of a right nor the untimely assertion of a right, so there was no waiver nor forfeiture.[12]

2. In her Brief, Ms. Thomas lays out a very sophisticated and serious argument that "[q]ualified immunity was expressly eliminated by 42 U.S.C. [§] 1983[.]"[13]  If this case reaches the Supreme Court, Ms. Thomas's argument should be given real consideration by the Justices.  But, for now, directly on-point holdings from the Supreme Court and the Eighth Circuit say that qualified immunity is a defense to a § 1983 claim.[14]  Those decisions bind this Court, and so this Court must reject Ms. Thomas's argument.

3. In her Brief, Ms. Thomas argues that the Court erred by judging the propriety of her detention using the reasonable suspicion standard (and thus the arguable reasonable suspicion standard for qualified-immunity-prong-two purposes).[15]  Ms. Thomas says the standard must be probable cause (and thus the arguable probable cause standard for qualified-immunity-prong-two purposes).[16]

---

[12] *See Reinard v. Crown Equip. Corp.*, 983 F.3d 1064, 1066 (8th Cir. 2020) ("[F]orfeiture is the 'failure to make the timely assertion of a right,' whereas waiver is the 'intentional relinquishment or abandonment of a known right.'") (quoting *Hamer v. Neighborhood Hous. Servs.*, 583 U.S. 17, 20 n.1 (2017)); *see also United States v. Campbell*, 26 F.4th 860, 889–90 (11th Cir.) (en banc) (Pryor, C.J., concurring) (highlighting the differences between waiver and forfeiture with respect to failures of a party to brief an issue).

[13] Br. in Supp. of Pl.'s Mot. to Alter J. (Doc. 87) at 19–27.

[14] *See, e.g.*, *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012); *Ryno v. City of Waynesville*, 58 F.4th 995, 1004–05 (8th Cir. 2023).

[15] *See* Br. in Supp. of Pl.'s Mot. to Alter J. (Doc. 87) at 18–19.

[16] *See id.*

The Court need not address this argument at length. Ms. Thomas has not just passively forfeited the argument. She has affirmatively waived it at several different points in this litigation. Although originally arguing (in her summary judgment briefing) that probable cause was the right standard, Ms. Thomas walked away from that position at the summary judgment hearing.[17] At that hearing, she expressly conceded that the right standard was actually reasonable suspicion.[18] Accordingly, as the Court noted in its summary judgment Order, both "parties agree[d]" that "reasonable suspicion" was the right standard.[19]

Consistent with Ms. Thomas's concession (and thus the agreement of the parties), Ms. Thomas submitted jury instructions using the reasonable suspicion standard as opposed to the probable cause standard.[20] And, in legal arguments during the trial, Ms. Thomas repeatedly acknowledged to the Court that the right standard was reasonable suspicion—never once arguing that probable cause was the correct standard under federal constitutional law.[21] This is particularly important because the Court's legal discussion with the Defendant made clear beyond a shadow of a doubt that both the Court and the Defendant were assuming reasonable suspicion and arguable

---

[17] *See* Feb. 21, 2023 Hr'g Tr. (Rough) at 12:29:04–12:30:18.

[18] *See id.*

[19] Summ. J. Order (Doc. 59) at 21–22.

[20] *See* Pl.'s Proposed Jury Instr. 13; Pl.'s Proposed Jury Instr. 14. These proposed jury instructions are not in the record. In all cases, the Court asks the parties to email proposed jury instructions to the Court a certain number of days prior to trial. The Court is attaching as Exhibit A to this Order the cover email transmitting the Plaintiff's proposed jury instructions and the two proposed instructions referenced in this footnote.

[21] *See* Sept. 1, 2023 Trial Tr. (Rough) at 8:49:23–8:51:38 (using the reasonable suspicion standard in argument), 9:17:18–9:18:36 (arguing without caselaw support that the state law claims should be examined under the "different" standard of probable cause, while acknowledging the reasonable suspicion standard for federal claims), 9:29:56–9:30:17 (again acknowledging the reasonable suspicion standard), 9:38:04–9:38:48 (acknowledging the arguable reasonable suspicion standard). Ms. Thomas's position at trial—that the correct standard is reasonable suspicion as opposed to probable cause—is also notable because the Court flagged this very issue in a long footnote in its summary judgment Order. *See* Summ. J. Order (Doc. 59) at 22 n.161. If Ms. Thomas had any doubts about her position, those should have been explored before trial and before she told the Court in very plain terms that the right standard was reasonable suspicion.

reasonable suspicion were the correct standards. Not only did Plaintiff not contest that position, but she agreed with it.[22]

If all this doesn't constitute a waiver, nothing does. Ms. Thomas clearly relinquished any argument that more than reasonable suspicion (or arguable reasonable suspicion for the second prong of qualified immunity) was needed. Accordingly, Ms. Thomas has waived any argument that the standard by which to judge the constitutionality of Ms. Thomas's detention is something higher than reasonable suspicion and (correspondingly) that the standard by which to judge prong two of the qualified immunity analysis is something higher than arguable reasonable suspicion.

4.  In light of the Court's above-explained rejections of her other arguments, Ms. Thomas's remaining argument is merely a request for the Court to reconsider the qualified immunity decision it made at trial.[23] Ms. Thomas's re-argument does not persuade the Court. After the close of evidence, the Court painstakingly explained why Warden Culclager was entitled to qualified immunity.[24] The Court will not repeat the same analysis. Rather, the Court adopts and incorporates that analysis in full here.[25]

Still, there is one additional (although somewhat tangential) point worth noting. Ms. Thomas's briefing is absolutely correct that taking a case away from the jury after the close of evidence is, and should be, extremely rare.[26] There are strong reasons of efficiency and economy to justify this general rule. But these reasons are, on occasion, overcome by the nature

---

[22] *See generally* Sept. 1, 2023 Trial Tr. (Rough) at 8:31:04–9:50:59.

[23] *See* Pl.'s Mot. to Alter J. (Doc. 86) at 1; Br. in Supp. of Pl.'s Mot. to Alter J. (Doc. 87) at 2–3, 15–17.

[24] Order Granting Qualified Immunity (Doc. 82) at 2–7.

[25] In its qualified immunity analysis, the Court walked through the information giving rise to arguable reasonable suspicion and reasonable suspicion. *See id.* at 3–6. This same information would have been enough for qualified immunity even if the governing standards were arguable probable cause and probable cause.

[26] *See* Br. in Supp. of Pl.'s Mot. to Alter J. (Doc. 87) at 2–3. *Cf. Passwaters v. Gen. Motors Corp.*, 454 F.2d 1270, 1272–73 (8th Cir. 1972).

of a particular case before the Court. And that's more likely when, as here, an immunity is at issue. One of the purposes of qualified immunity is to shield government officials from trial (not just liability) where their conduct has not violated clearly established law.[27] If, during trial, a judge becomes convinced that qualified immunity is warranted as a matter of law, requiring an official to nonetheless continue the trial process undermines (if not eviscerates) this important protection.[28]

Indeed, governing caselaw counsels the Court to make a decision on qualified immunity before sending the case to the jury on the merits.[29] Ms. Thomas is really not complaining about that. Rather, Ms. Thomas is complaining about the Court making a qualified immunity decision without first sending to the jury factual questions connected to the qualified immunity analysis.[30] But, after hearing the trial evidence, it was clear there was no need to send back any factual questions. As the Court explained at the trial, Warden Culclager deserved qualified immunity even under the most pro-plaintiff version of the disputed facts a reasonable jury could find.

To cut to the chase, after hearing the trial testimony concerning the day in question, the Court became convinced it had missed an important aspect of the arguable reasonable suspicion analysis at the summary judgment stage. The Court's denial of summary judgment primarily focused on whether, at the relevant time, Warden Culclager should be charged with knowing that no contraband was found during a strip-search of Ms. Thomas.[31] The Court's background

---

[27] *See Waters v. Madson*, 921 F.3d 725, 735 (8th Cir. 2019).

[28] *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("[Qualified immunity] is effectively lost if a case is erroneously permitted to go to trial."); *Murphy v. Morris*, 849 F.2d 1101, 1104 (8th Cir. 1988) (noting that the one of the principal benefits of an immunity defense is the right to be free from "as many of the costs, risks and disruptions of the trial process as possible").

[29] *See supra* note 28; *see also Hunter v. Bryant*, 502 U.S. 224, 228 (1991) ("Immunity ordinarily should be decided by the court long before trial."). *Cf. Littrell*, 388 F.3d at 584–86; *Lee*, 616 F.3d at 811; *Ellison v. Lesher*, 796 F.3d 910, 918 (8th Cir. 2015).

[30] *See* Br. in Supp. of Pl.'s Mot. to Alter J. (Doc. 87) at 2–3.

[31] *See* Summ. J. Order (Doc. 59) at 7–8, 20–27.

assumption was that such knowledge would defeat reasonable suspicion or even arguable reasonable suspicion. And, as the Court then explained, there were disputed questions of fact material to the question of whether Warden Culclager should be charged with such knowledge.[32]

Trial gave the Court a better, more vivid understanding of the story and events of the day. As the trial went on, the Court came to the legal conclusion that its background assumption at the summary judgment stage was wrong. Considering the mix of other facts known to Warden Culclager at the relevant time, Warden Culclager's knowledge that Ms. Thomas passed a strip-search would not have defeated arguable reasonable suspicion.[33] The strip-search did not include a cavity search.[34] Contraband could still be where the scanner suggested it was—inside Ms. Thomas's vaginal area.[35] While passing a strip-search somewhat reduced the quantum of suspicion, it did not reduce the quantum of suspicion below arguable reasonable suspicion (or even reasonable suspicion).[36] Given the Court's revised legal conclusion, the disputed fact questions the Court identified in its summary judgment Order as preventing summary judgment on the qualified immunity issues were no longer material. Whatever answers the jury would have given to those questions, the Court would have still concluded that arguable reasonable suspicion existed and qualified immunity was thus justified.

---

[32] *See id.* at 26–27.

[33] *See* Order Granting Qualified Immunity (Doc. 82) at 5.

[34] *See* Aug. 31, 2023 Trial Tr. (Rough) at 10:56:31–10:58:37.

[35] *See* Aug. 30, 2023 Trial Tr. (Rough) at 15:09:18–15:10:05.

[36] The Court notes that it is not relying on the testimony that people can hide things in small areas of their body. *See Lucero v. Bush*, 737 F. Supp. 2d 992, 1007, 1007 n.9 (D.S.D. 2010) (holding that such testimony is conclusory and does not provide the particularized suspicion necessary for a search to be deemed reasonable). That is not a proposition for which testimony is needed. The Court is relying on the testimony that (1) Ms. Thomas's first two body scans indicated that there was an anomaly in one of Ms. Thomas's bodily cavities, *see* Aug. 31, 2023 Trial Tr. (Rough) at 10:33:40–10:33:54, 10:51:29–10:51:52; (2) the subsequent strip-search did not include a cavity search, *see id.* at 10:56:31–10:58:37; and (3) a strip-search, without a cavity search, could not establish that Ms. Thomas was not carrying contraband in a bodily cavity, *see* Aug. 30, 2023 Trial Tr. (Rough) at 15:09:18–15:10:05. That testimony is undisputed.

## **CONCLUSION**

For the foregoing reasons, all of the relief requested in Plaintiff's Motion is denied.

IT IS SO ORDERED this 20th day of May 2024.

                                                  LEE P. RUDOFSKY
                                                  UNITED STATES DISTRICT JUDGE